WALLACE, Circuit Judge,
concurring in part and dissenting in part:
I concur in the bulk of the majority’s well-reasoned opinion. I dissent, however, from the majority’s conclusion that genuine issues of material fact remain as to whether the- DOT effectively abdicated its authority over fuel surcharges that Defendants actually filed with the DOT.
In Section III, Subsection B, the majority discusses the second type of rate at issue in this appeal: fuel surcharges. In 1999, when the DOT implemented the category A, B, and C rate-filing system, the DOT explicitly stated that “all surcharges are to be filed.” At the same time, however, the DOT did not allow fuel surcharges to be filed separately from airfares. Instead, the DOT insisted that carriers should recoup fuel expenses through increases in their base fares. In 2004, the DOT changed this policy, and allowed, but did not require, airlines to file separate fuel surcharges.
*618 The parties disagree vigorously as to what the record reflects regarding the filing of fuel surcharges. Defendants assert that they “are unambiguously required to' file all surcharges, including fuel surcharges, with DOT.... While the district court concluded that DOT did not require fuel surcharges to be filed, that conclusion was simply incorrect.” Plaintiffs, on the other hand, contend that Defendants “were never required to file them as a matter of law.” Notwithstanding the factual disagreement over whether the DOT required the filing of surcharges after 2004, the record is also unclear as to whether Defendants actually filed them in a consistent manner.
In sorting through the record on the filing of fuel surcharges, the majority concludes that “summary judgment based on the application of the filed rate doctrine was inappropriate in light of the DOT’s express statement that it lacks the ability to ‘effectively monitor’ fuel surcharges.” For the fuel surcharges that were not actually filed, I agree with the majority’s analysis, and assert that these unfiled surcharges should be treated the same as the unfiled airfares. Defendants have not pointed to any evidence indicating the DOT’s regulation of unfiled fuel surcharges. Instead, Defendants merely assert that the DOT required all surcharges to be filed (which, as described above, is contested). Accordingly, I agree with the majority’s holding that the filed rate doctrine does not bar, as a matter of law, antitrust challenges to unfiled fuel surcharges.
I conclude, however, that the majority is incorrect as to any fuel surcharges that were actually filed. In Square D Co. v. Niagara Frontier Tariff Bureau, Inc., the Supreme Court affirmed the filed rate doctrine’s viability and held that the filed rate doctrine was not limited to instances in which “rates had been investigated and approved” but rather extended to instances “whenever tariffs have been filed.” 476 U.S. 409, 417 n.19, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986), quoting Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 760 F.2d 1347, 1351 (2d Cir. 1985).
The facts and the Supreme Court’s holding in Square D are not the same as in our case. Moreover, Square D merely made the assertion in a footnote that the filed rate doctrine bars claims “whenever tariffs have been filed.” Nevertheless, this footnote from Square D is the closest the Supreme Court has come to answering the question of whether challenges to rates that were actually filed are permissible under the filed rate doctrine. The Supreme Court answered no to this critical question. Thus, I assert that the fuel surcharges that have actually been filed in our case fall under the umbrella of Square D’s holding.
The majority’s conclusion on this issue seems to rely solely on the DOT’s statement that it lacked the ability to “effectively monitor” fuel surcharges. The DOT’s statement, however, must be read in its full context. In 2004, the DOT stated:
[T]he desire of carriers to pass on the higher cost of certain expenses discretely, such as insurance and fuel, has led to such expenses being filed separately from the “base” fare in tariffs, a situation that the Department cannot effectively monitor.... [T]he Enforcement Office will no longer allow the separate listing of “government-approved” surcharges in fare advertising. We will consider the separate listing of such charges in fare advertisements an unfair and deceptive trade practice....
69 Fed. Reg. at 65676-77. From this single statement, regarding “the separate listing of ‘government-approved’ surcharges in fare advertising,” the majority formulates *619 a genuine issue of material fact as to whether the filed rate doctrine is inapplicable to all fuel surcharges, whether or not they were filed. I assert that the majority reads far too much into the DOT’s statement relating to advertising.
Accordingly, I would reverse the district court to the extent it held that Plaintiffs could challenge the literally-filed fuel surcharges. The existence of the rates that were actually filed, combined with the existence of the DOT’s consumer complaint process, negates any issue of material fact as to whether the DOT effectively abdicated its authority to regulate actually-filed fuel surcharges.
When we create and expand judge-made doctrines, such as the filed rate doctrine, we must do so with an eye towards the lower courts’ application of those doctrines. In Gallo and Carlin, we employed the “effective abdication” exception to the filed rate doctrine in situations when rates had not actually been filed.[1] This rule erected a clear barrier between treatment of rates that had actually been filed versus those that had not. Here, the majority muddles that barrier, and expands the exception by adopting the rule that courts must determine when an agency has “effectively abdicated” its authority, notwithstanding the actual filing of rates. I fear this expansion has no limiting principle, and could lead to the crumbling of the filed rate doctrine, in contravention of the Supreme Court’s guidance. Adhering to a rule — that the literal filing of rates means the filed rate doctrine applies — is more' workable than the nebulous standard the majority has constructed here. Thus, I respectfully dissent from Section III, Subsection B of the majority opinion.

. The majority, in footnote 5, asserts that Gallo stands for the proposition that the filed rate doctrine's application “does not turn on ‘the act of literal rate filing' ” (Majority Opinion at n.5, quoting Gallo, 503 F.3d at 1040). The majority’s statement is misleading. The full sentence from Gallo, from which the majority selectively clips, is: "Moreover, although the Supreme Court initially applied the Filed Rate Doctrine to actual filed rates, courts have held that the principles underlying this doctrine preclude challenges to a wide range of FERC actions, not just the act of literal rate filing.” Id. In essence, what Gallo conveys here is that while the filed rate doctrine has commonly applied only to actually-filed rates, its reach can expand even further, to scenarios in which rates have not been filed. In no way does Gallo suggest that the filed rate doctrine does not apply to actually-filed rates. Indeed, application to filed rates makes sense and is not "unbounded,” because it allows the DOT to rely on complaints about a filed rate to exercise its supervision.